This is an appeal from a decree of the Court of Chancery awarding the petitioner husband a divorce on the ground of adultery and dismissing the counter-claim of the defendant wife by which she sought a divorce for the alleged extreme cruelty of her husband. The decree awarded custody of a son of the parties to the father and of a daughter to the mother, and directed the petitioner to pay $7 a week for the support of the daughter. The appeal concerns the sufficiency of the proofs with respect to the adultery and the extreme cruelty, and questions of fact only are presented.
The parties were married January 23d 1926, and the children are fifteen and twelve years old. Petitioner and defendant lived together until November, 1940, when the husband left the domicile and took the boy with him. The *Page 348 
charges of adultery involve one Cornelius Hargroves who rented a room at the home of the parties from December, 1939, until July 15th, 1940, when he was requested by the petitioner to leave. Petitioner became suspicious of the relations between Hargroves and the defendant because he found them talking in the kitchen several times and because the son reported to him that he once found them drinking together in the kitchen. However, the testimony upon which the decree is based concerns events that occurred after Hargroves left the home of the parties on July 15th, 1940.
Early in August, 1940, petitioner found in his wife's handbag a card bearing the words "Mrs. Povey, 91 Springfield Avenue." He later found a key in the handbag, according to his testimony. Investigation proved that the key was a key to an apartment at 91 Springfield Avenue which had been rented to Hargroves. The apartment contained two rooms, a kitchen and a bedroom.
The witness Kittie Povey was caretaker of this apartment house and testified that Hargroves and the defendant came to the premises, inspected the apartment and rented it, Hargroves paying part of the first payment of rent and defendant paying part. She testified that she inquired if they were husband and wife and was told by the defendant that they were. She testified to frequent visits to the apartment by the defendant, almost every other day; that defendant would stay as long as two hours; that she used the bathroom which was outside the apartment and was reached by means of the hall. She testified that after the petitioner called upon her and informed her of the situation, she gave Hargroves notice to move and told the defendant not to go up to his apartment, despite which defendant continued to visit the Hargroves apartment.
The defendant's version of her visits to the Springfield Avenue apartment was that Hargroves was a vendor of medicines and herbs and defendant purchased such products for her own use and the use of her mother. She testified the visits were infrequent and lasted but a few minutes. She testified that, after the conversation with Mrs. Povey, she did not go to the premises again. She denies she was with Hargroves *Page 349 
when he rented the place and Hargroves testified that it was another woman, whom he was unable to name, but Mrs. Povey was very positive in her identification. Defendant says the key which petitioner purportedly took from her handbag was not in fact in the bag, but petitioner says it was and Mrs. Povey testified she gave a key to each of them when the apartment was rented and there is no other way in which this key, which was identified as the key to the flat, is attempted to be accounted for.
Petitioner saw his wife and Hargroves together on the street on more than one occasion and once attacked him, which occurrence resulted in petitioner's arrest and subsequent discharge in the Police Court. Defendant explains these meetings as innocent and accidental.
The testimony is in conflict and there are many contradictions. There is no proof of inclination to commit adultery in the form of evidence of caressing, or things of that sort, and the case rests entirely upon the prolonged visits of the defendant to Hargroves' home. We are of the opinion that the evidence is sufficient to support the finding of guilt upon the adultery charge. The evidence of the witness Mrs. Povey carried much weight with the advisory master who heard the case. From a reading of the record she seems to be a disinterested witness who told an entirely credible story. By her testimony it is established that the defendant visited frequently and for long periods at a time at Hargroves' place of residence. From this course of conduct we think both inclination and opportunity may be found. It being established that she did in fact make these frequent and long visits, then there can be no other finding than one of guilt. The explanation given for these visits is inconsistent with the frequency and length of them, and there being no plausible explanation, we think there was no innocent purpose in such visits.
As to the charges of extreme cruelty, which consisted of alleged physical violence, false accusations of infidelity, calling names and other alleged misconduct, we are of the opinion that they have not been established by the necessary weight of the evidence. The same is to be said of the defense of *Page 350 
condonation, which was permitted to be pleaded by amendment after the first hearing.
The decree under review is affirmed.
For affirmance — THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 14.
For reversal — None.